# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JEREMY GRABER,** <br> **Plaintiff,** <br> v. <br> **POLICE INSPECTOR JOEL DALES,** *et al.*, <br> **Defendants.** | **CIVIL ACTION NO. 18-3168** |

## MEMORANDUM OPINION

**Rufe, J.**                                                                                          **September 30, 2019**

Plaintiff Jeremy Graber alleges that his First and Fourth Amendment rights were violated when he was arrested and charged with a federal offense during a protest at the Democratic National Convention. Defendant Michael Boresky, a Secret Service agent, has moved to dismiss all claims against him.

### I.    BACKGROUND

The Democratic National Convention was held at the Wells Fargo Center in Philadelphia, Pennsylvania on July 25-27, 2016.[1] The Department of Homeland Security designated the Convention as a National Special Security Event, meaning an event that may be a target for terrorism or other criminal activity.[2] Accordingly, the Secret Service managed security for the Convention,[3] including setting up a security fence around the event.[4]

---

[1] Amend. Compl. [Doc. No. 3] at ¶¶ 3, 8.

[2] *Id.* at ¶ 8.

[3] *Id.*

[4] *Id.* at ¶ 12.

Throughout the Convention, various groups of protesters gathered outside to demonstrate.[5] On the evening of July 27, a protester breached the security fence near the corner of Broad Street and Pattison Avenue by cutting the fence with bolt cutters.[6] Several protesters entered the secure zone through the damaged fence and were arrested.[7]

Plaintiff alleges that at the time the fence was breached, he was standing nearby, but did not assist the breach or follow the other protesters into the secure area.[8] Nevertheless, Plaintiff alleges, Philadelphia police officer Joel Dales "forcibly grabbed" Plaintiff, pulled him through the crowd, and began "illegally searching" Plaintiff's pockets assisted by several other Philadelphia police officers.[9] Finding three small knives in Plaintiff's possession, the officers allegedly pulled Plaintiff past the fence and into the secure area, where they handcuffed him and searched him again.[10] Plaintiff was transported with six other arrested protesters to the Federal Detention Center, where he was detained overnight.[11]

The following day, Defendant Michael Boresky, a Secret Service agent, filed an affidavit with a magistrate judge seeking a federal arrest warrant for Plaintiff and the other protesters and initiated a criminal complaint against them for knowingly entering the restricted grounds of the Convention in violation of 18 U.S.C. § 1752(a)(1).[12] On the basis of the complaint and affidavit, the magistrate judge ordered Plaintiff detained pending trial.[13] Within days, however, Plaintiff

---

[5] *Id.* at ¶ 15.
[6] *Id.* at ¶¶ 19, 29.
[7] *Id.* at ¶ 21.
[8] *Id.* at ¶ 20.
[9] *Id.* at ¶ 22.
[10] *Id.* at ¶¶ 22–24.
[11] *Id.* at ¶ 25.
[12] *Id.* at ¶¶ 28–29.
[13] *Id.* at ¶ 30.

was released after footage of the protest confirmed that Plaintiff never intentionally entered the secure zone, and the government dismissed the charges against him shortly thereafter.[14]

Plaintiff has sued the Philadelphia police officers under § 1983 and asserts claims against Defendant Boresky, the only federal defendant, pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*.[15]

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a party may seek dismissal of an action for lack of subject matter jurisdiction. The plaintiff has "the burden of proof that jurisdiction does in fact exist."[16] Sovereign immunity is a proper basis for a 12(b)(1) motion to dismiss because federal courts lack jurisdiction over suits against the United States except where it has consented to be sued.[17]

### B. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a party may seek dismissal of an action for failure to state a claim upon which relief may be granted. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[18]

In evaluating a Rule 12(b)(6) motion, the court "must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately

---

[14] *Id.* at ¶¶ 32–33.

[15] 403 U.S. 388 (1971).

[16] *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006).

[17] *See United States v. Mitchell*, 445 U.S. 535, 538 (1980).

[18] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 570 (2007)).

determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint."[19] The court need not accept as true legal conclusions, even those couched as factual allegations.[20] The Rule 12(b)(6) inquiry is generally limited to the material in the complaint itself, but courts may also consider exhibits attached to the complaint, undisputedly authentic documents upon which the complaint is based, and matters of public record.[21]

### III. DISCUSSION

#### A. Motion to Dismiss Under Rule 12(b)(1)

Plaintiff sued Defendant Boresky in both his personal and official capacity for violations of his First and Fourth Amendment rights and conspiracy to violate his First and Fourth Amendment rights. Defendant Boresky has moved to dismiss the claims against him in his official capacity for lack of subject matter jurisdiction.

Claims against government officers in their official capacity are claims against the government itself.[22] The United States enjoys sovereign immunity from suit except where it consents to be sued.[23] In the absence of such consent, federal courts lack jurisdiction over suits against the United States.[24] Since the United States has not waived sovereign immunity for constitutional tort claims,[25] the Court lacks subject matter jurisdiction, so Plaintiff's official-capacity claims against Defendant Boresky will be dismissed.[26]

---

[19] *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).

[20] *Twombley*, 550 U.S. at 555.

[21] *Mayer*, 605 F.3d at 230.

[22] *Kentucky v. Graham*, 473 U.S. 159, 163–64 (1985).

[23] *Mitchell*, 445 U.S. at 538.

[24] *See id.*

[25] *FDIC v. Meyer*, 510 U.S. 471, 478 (1994).

[26] Plaintiff does not oppose Defendant Boresky's motion to dismiss the official-capacity claims against him. *See* Pl.'s Mem. Opp. [Doc. No. 17] at 5.

### B. Motion to Dismiss Under Rule 12(b)(6)

#### 1. Fourth Amendment Claim

##### a. *Bivens* Analysis

Plaintiff first alleges that Defendant Boresky violated his Fourth Amendment rights. Because Defendant Boresky is a federal agent, this constitutional claim is viable only if a *Bivens* cause of action exists—if, in other words, the Court implies a private right of action directly under the Constitution.[27] Expanding the *Bivens* remedy, however, "is now a 'disfavored' judicial activity,"[28] and the Supreme Court has "repeatedly refused" to extend *Bivens* beyond the three contexts in which it has explicitly recognized an implied right of action.[29] Those three contexts are "violations of the Fourth Amendment's right against unreasonable searches and seizures" as recognized in *Bivens* itself; gender discrimination in employment under the Due Process Clause of the Fifth Amendment; and inadequate prison medical care (and certain other conditions-of-confinement claims) under the Cruel and Unusual Punishments Clause of the Eighth Amendment.[30]

In *Ziglar v. Abbasi*, the Supreme Court provided a two-step analytic framework for determining whether to "extend a *Bivens*-type remedy."[31] First, courts must consider whether the claim presents a "new *Bivens* context," that is, whether "the case is different in a meaningful way from previous *Bivens* cases decided by" the Supreme Court.[32] A case might differ meaningfully,

---

[27] *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854–55 (2017) ("Congress did not create an analogous statute [to 42 U.S.C. § 1983] for federal officials.").

[28] *Id.* at 1857 (citation omitted).

[29] *Bistrian v. Levi*, 912 F.3d 79, 89 (3d Cir. 2018).

[30] *Id.* at 89, 90–94.

[31] 137 S. Ct. at 1859.

[32] *Id.* at 1859.

and thus represent a "new context," because of "the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; [and] the risk of disruptive intrusion by the Judiciary into the functioning of other branches[.]"[33]

If the context is new, courts consider whether any "special factors counsel[] hesitation" in extending a *Bivens* remedy.[34] "There may be many such factors, but two are particularly weighty: the existence of an alternative remedial structure and separation-of-powers principles."[35] Courts also consider "whether a claim addresses individual conduct or a broader policy question" and "whether national security is at stake," among other factors.[36] The central question at which all these considerations aim is "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed."[37]

Plaintiff alleges that Defendant Boresky violated his Fourth Amendment rights by filing an affidavit in support of an arrest warrant that resulted in his unconstitutional detention. Whether this presents a new *Bivens* context is a perplexing question after *Abbasi*.[38] On one hand, Plaintiff's claims seem to challenge precisely the kind of core, run-of-the-mill Fourth Amendment activity for which a *Bivens* cause of action has always been thought to be

---

[33] *Id.* at 1859–60.

[34] *Id.* at 1857.

[35] *Bistrian*, 912 F.3d at 90.

[36] *Id.*

[37] *Abbasi*, 137 S. Ct. at 1857–58.

[38] Defendant Boresky suggests that this argument is waived because Plaintiff did not argue in his response that this is not a new context. Def.'s Reply Mem. [Doc. No. 21] at 3. The Court deems it appropriate, however, to consider both elements of the *Abbasi* analysis.

6

available—the seizure of a person without probable cause by a federal agent, just as in *Bivens* itself.[39] On the other hand, *Abbasi* made clear that even relatively trivial factual differences might make a context new.[40] Here, Defendant Boresky was the affiant on the arrest warrant, not the on-scene arresting officer; he is a Secret Service agent, not a federal narcotics agent; and, Defendant Boresky argues, Plaintiff's arrest outside the Convention—an event attended by the President, Vice President, and Democratic presidential nominee—has a national-security dimension that the typical Fourth Amendment *Bivens* claim lacks.[41]

Whether these differences are "meaningful" is a close call. Seeking an arrest warrant from a magistrate judge is different from personally handcuffing a suspect, but both are part and parcel of the seizure of a person.[42] As to the federal agency involved, while it is true that "as part of the new-context analysis, the *Abbasi* Court 'refused to extend *Bivens* to any . . . new category of defendants,'"[43] the Court notes that the federal agency whose officers were sued in *Bivens* no

---

[39] *See Bivens*, 403 U.S. at 389.

[40] *See Abbasi*, 137 S. Ct. at 1860; *Tun-Cos v. Perrotte*, 922 F.3d 514, 520–25 (4th Cir. 2019) (holding that a search-and-seizure claim presented a new context because it "concern[ed] ICE agents' enforcement of the INA, rather than traditional law enforcement officers' enforcement of the criminal law"). Complicating things further, the Third Circuit has recognized that the list of existing, Supreme Court-approved *Bivens* contexts may not be as limited as *Abbasi* suggested; at least one other Supreme Court case, *Farmer v. Brennan*, 511 U.S. 825 (1994), approved an implied right of action against federal officials for a failure-to-protect claim by a prison inmate. *See Bistrian*, 912 F.3d at 90–92. That claim, according to the Third Circuit, remains available—but as far as the Court is aware, *Farmer* is the only member of this "invisible *Bivens*" set and Plaintiff has not identified a similar Supreme Court case covering the context at issue here other than *Bivens* itself.

[41] Concerns about judicial intrusion on national security policy are better treated as a special factor counselling hesitation than as part of the new context analysis. *See Abbasi*, 137 S. Ct. at 1860–62.

[42] *See Jacobs v. Alam*, 915 F.3d 1028, 1038–39 (6th Cir. 2019) (holding that despite some "factual differences," claims for excessive force, false arrest, malicious prosecution, fabrication of evidence, and civil conspiracy were "run-of-the-mill challenges to 'standard law enforcement operations' that [fell] well within *Bivens* itself" and thus were not new contexts).

[43] *Tun-Cos*, 922 F.3d at 525.

longer exists.[44] Thus, a different agency name on the back of an officer's windbreaker, standing alone, seems insufficient to constitute a new context.[45]

Even if Plaintiff's claim is different enough from *Bivens* itself to be called a new context, however, the special factors counselling hesitation pressed by Defendant Boresky are not persuasive. Defendant Boresky emphasizes that the Convention was "designated as a National Special Security Event," and that judicial intrusion into matters of national security raises separation-of-powers concerns.[46] This is certainly true of national security *policy*. If Plaintiff were challenging broader Secret Service procedures, or even case-specific decisions like the chosen location of the secure perimeter outside the Convention, that could counsel against extending a *Bivens* remedy.[47] But the connection to national security here is tenuous. Crucially, this case is unlike *Abbasi*, which sought relief against top Department of Justice officials including the Attorney General himself and thus implicated high-level policy decisions.[48] At this stage it appears that Plaintiff's claims do not implicate government policy at all; rather, Plaintiff

---

[44] Reorganization Plan No. 1 of 1968, Pub. L. No. 90-623, § 4, 82 Stat. 1367, 1368 (abolishing the Bureau of Narcotics in the Department of the Treasury and establishing the Bureau of Narcotics and Dangerous Drugs in the Department of Justice); H.R. DOC. NO. 90-250, at 9–10 (1968) (explaining that inconsistent penalty schemes and a lack of manpower warranted eliminating the Bureau of Narcotics and consolidating anti-drug operations in the Department of Justice); Diane E. Hoffman, *Treating Pain v. Reducing Drug Diversion and Abuse*, 1 ST. LOUIS U. J. HEALTH L. & POL'Y 231, 263–64 (2008) (tracing evolution of agencies responsible for federal drug enforcement beginning with the Federal Bureau of Narcotics, which was replaced in 1968 by the Bureau of Narcotics and Dangerous Drugs, which merged with other agencies in 1973 to become the Drug Enforcement Administration).

[45] This is unlike a situation where an agency's officers are charged with enforcing a legal regime entirely separate from the criminal law. See *Tun-Cos*, 922 F.3d at 524–25.

[46] Def.'s Mem. [Doc. 8] at 13.

[47] One paragraph of the Amended Complaint does contain some vague gripes that security measures at the Convention were excessive and arbitrary. *See* Amend. Compl. at ¶ 13. The Court understands this as mere background, as Plaintiff has sued only the arresting officers, not those who set Secret Service policy, and has not requested policy changes as part of the relief sought in this action. Plaintiff's briefing confirms this. *See* Pl.'s Mem. at 18 ("It is the individual decision by Defendant Boresky[,] not a challenge to the policy of the federal government[,] that is challenged in Plaintiff's complaint."). In addition, Defendant Boresky concedes that Plaintiff is challenging only individual misconduct and argues instead that policy is implicated insofar as permitting a *Bivens* cause of action to lie against Secret Service agents would force the agency to anticipate lawsuits when it makes decisions. Def.'s Reply Mem. at 5.

[48] *Abbasi*, 137 S. Ct. at 1853.

is merely challenging the constitutionality of a one-off arrest. In other words, this is a "straightforward case against a single low-level federal officer."[49] The Supreme Court warned in *Abbasi* that "national-security concerns must not become a talisman used to ward off inconvenient claims."[50] The proper focus here is the concrete actions Plaintiff challenges in this case, which amount to ordinary criminal law enforcement.

Nor does this case concern the life-or-death snap judgments that Secret Service agents must sometimes make while protecting high-level government officials. The potential for chilling decisive action in the course of protecting Presidents would indeed give the Court pause.[51] Plaintiff's claim instead concerns the decision—made with the benefit of at least half a day of investigation, and while the suspect was already in custody—to seek an arrest warrant from a magistrate judge, an altogether routine task for any law enforcement officer.

Finally, Congress's failure to provide an explicit damages remedy despite its "involvement in shaping the Secret Service and national security events" is not especially telling in this case.[52] When Congress has legislated extensively in a particular area without creating a damages remedy, that can indicate that congressional inaction was intentional.[53] *Abbasi*, however, linked this concept of meaningful inaction to the inappropriateness of challenging high-level policy through a *Bivens* suit.[54] Because high-level policy decisions are likely to attract

---

[49] *Lanuza v. Love*, 899 F.3d 1019, 1029 (9th Cir. 2018).

[50] *Abbasi*, 137 S. Ct. at 1862.

[51] *See Reichle v. Howards*, 566 U.S. 658, 671 (2012) (Ginsburg, J., concurring) ("Officers assigned to protect public officials must make singularly swift, on the spot, decisions whether the safety of the person they are guarding is in jeopardy.").

[52] Def.'s Mem. at 15; *cf. Hernandez v. Mesa*, 885 F.3d 811, 820 (5th Cir. 2018), *cert. granted*, 139 S. Ct. 2636 (2019) (declining to extend *Bivens* in a cross-border shooting case where the United States and Mexico had engaged in "serious dialogue" regarding the very shooting at issue, reasoning that the court should not overrule the other branches' considered decision not to take action against the agent).

[53] *Abbasi*, 137 S. Ct. at 1862.

[54] *Id.*

9

congressional attention, the Court explained in *Abbasi*, it was particularly "difficult to believe that 'congressional inaction' was inadvertent."[55] Here, Plaintiff does not challenge Secret Service policy, but rather alleges individual, low-level misconduct, which is far likelier to escape congressional notice.[56] The handful of statutes creating the Secret Service and governing its mandate[57] cannot be compared to Congress's "frequent and intense" attention to the prevention of terrorism in the wake of the September 11, 2001 attacks.[58] Moreover, given that Plaintiff's claim is so close to the core of *Bivens* itself, it is particularly unlikely that Congress meant to preclude a damages remedy by its silence.

As for alternative remedies, Defendant Boresky argues that the Federal Tort Claims Act and the availability of relief against the Philadelphia police officers under § 1983 are enough for Plaintiff. But "the existence of an FTCA remedy does not foreclose an analogous remedy under *Bivens*,"[59] since it is "crystal clear that Congress intended the FTCA and *Bivens* to serve as parallel and complementary sources of liability."[60] And the Court is not aware of any precedent (and Defendant has provided none) holding that the availability of relief against other individual officers should preclude a *Bivens*-type remedy.

---

[55] *Id.*

[56] *See Turkmen v. Ashcroft*, No. 02-2307, 2018 WL 4026734, at *8 (E.D.N.Y. Aug. 13, 2018) ("[I]n dismissing plaintiffs' detention policy claims in *Ziglar*, the Court pointed out that Congress's 'silence is notable because it is likely that high-level policies will attract the attention of Congress.' Because plaintiffs' prisoner abuse claim does not involve 'high-level policies,' this aspect of *Ziglar*'s holding is not controlling here.").

[57] *See* Def.'s Mem. at 14.

[58] Indeed, *Abbasi* noted affirmative evidence that Congress anticipated the potential for civil rights abuses in the prevention of terrorism and that the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 ("PATRIOT Act"), Pub. L. No. 107-56, § 1001, 115 Stat. 272, 391 (2001), required regular reports to Congress on that subject. 137 S. Ct. at 1862. The absence of a damages remedy is far more telling where it is clear that Congress contemplated that one might be needed.

[59] *Bistrian*, 912 F.3d at 92; *see also id.* ("[T]he prospect of relief under the FTCA is plainly not a special factor counseling hesitation in allowing a *Bivens* remedy.").

[60] *Id.* (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001)).

10

While *Abbasi* disallowed challenges to "large-scale policy decisions" through a *Bivens* suit, it did not call into question "the continued force, or even the necessity, of *Bivens* in the search-and-seizure context in which it arose."[61] Indeed, the Court made clear that a *Bivens* cause of action remains available where it is most needed—in "individual instances of . . . law enforcement overreach" for which the remedy is "damages or nothing."[62] At this early stage of Plaintiff's lawsuit, his claim appears to land squarely within that category.

### b. Qualified Immunity Analysis

Because the Court has determined that a *Bivens* cause of action is available for Plaintiff's Fourth Amendment claim, the question remains whether Defendant Boresky is entitled to qualified immunity. To overcome the defense of qualified immunity, a plaintiff must plausibly "allege facts showing that the conduct of each individual federal defendant (1) 'violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.'"[63] The Court concludes that Plaintiff has adequately alleged a Fourth Amendment violation and that the issue of qualified immunity cannot be resolved at this stage.

First, Plaintiff has plausibly alleged that Defendant Boresky's conduct violated the Fourth Amendment. Fairly read, the complaint alleges the following: Plaintiff was arrested without probable cause by Philadelphia police officers while exercising his First Amendment rights at a protest outside the Convention; Plaintiff was held in custody overnight; and the following day, Defendant Boresky filed an affidavit in support of a federal warrant for Plaintiff's arrest, the content of which is revealed by video footage of the event to be "completely false."[64] Taking

---

[61] *Abbasi*, 137 S. Ct. at 1856.

[62] *Id.* at 1862.

[63] *George v. Rehiel*, 738 F.3d 562, 572 (3d Cir. 2013) (quoting *Ashcroft v. Al-Kidd*, 563 U.S. 731, 735 (2011)).

[64] Amend. Compl. at ¶ 33.

11

into consideration trial testimony in the underlying criminal case against the other six protesters arrested with Plaintiff, as Defendant Boresky would have the Court do,[65] it also appears that Defendant Boresky was not at the scene when Plaintiff was arrested, but rather relied solely on information provided to him by one Special Agent McCaa (who is not named as a defendant) in preparing the affidavit.[66]

"The legality of a seizure based solely on statements issued by fellow officers depends on whether the officers who issued the statements possessed the requisite basis to seize the suspect."[67] Liability for an unconstitutional seizure thus passes directly through an officer in Defendant Boresky's position—an affiant without first-hand knowledge of the underlying facts—and turns on whether the officer on whose statements he relied had probable cause himself. In other words, the collective knowledge doctrine is no help to Defendant Boresky, since facts and circumstances actually supporting probable cause were allegedly not within the collective knowledge of the officers with whom he was collaborating and communicating.[68] Since Plaintiff has adequately alleged that the officers on the scene lacked probable cause to arrest him, he has stated a claim against Defendant Boresky as the affiant as well.

Second, even if the on-scene officers in fact lacked probable cause to arrest Plaintiff, Defendant Boresky would still be entitled to qualified immunity if it were "objectively reasonable for him to believe, on the basis of [those officers'] statements, that probable cause for the arrest existed."[69] That inquiry, however, necessarily requires examining the content of the

---

[65] *See* Def.'s Mem. at 6; *see Mayer*, 605 F.3d at 230 (noting that matters of public record may be considered on a motion to dismiss without converting the motion to one for summary judgment).

[66] Def.'s Mem. at 18.

[67] *Rogers v. Powell*, 120 F.3d 446, 453 (3d Cir. 1997).

[68] *Contra* Def.'s Mem. at 18 (citing *O'Connor v. City of Philadelphia*, 233 F. App'x 161, 165 (3d Cir. 2007)).

[69] *Rogers*, 120 F.3d at 455. The Court notes that although courts in this Circuit continue to adhere to the *Rogers* formulation of the qualified immunity standard for reliance on fellow officers' statements, *see Summerville v.*

statements on which Defendant Boresky relied.[70] Since those statements are not in the record at this stage, it is not possible to say whether it was objectively reasonable for Defendant Boresky to rely on them.[71] The Court is mindful that qualified immunity is an immunity from suit, not merely a defense to liability,[72] and that resolving the issue as early as possible is therefore desirable. In this case, however, it appears that at least some discovery will be required to answer this question.

### 2. First Amendment Claim

Plaintiff next claims that Defendant Boresky violated his First Amendment rights by interfering with his protected speech in the form of participation in a political protest outside the Convention.[73] Although the Amended Complaint is not entirely clear in this respect, Plaintiff seems to assert that his arrest unconstitutionally "terminat[ed]" his protected speech in the form of "demonstrat[ing] and gather[ing] in protest,"[74] rather than that he was arrested in retaliation

---

*Gregory*, No. 14-7653, 2019 WL 4072494, at *21 n.22 (D.N.J. Aug. 29, 2019), in general the "objectively reasonable" formulation of the qualified immunity standard has given way to the "clearly established law" formulation, *compare, e.g.*, *Wood v. Strickland*, 420 U.S. 308, 318 (1975), *with, e.g.*, *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam), and in that respect the wording of *Rogers* may be outdated. Either way, however, the result is the same here.

[70] *See Rogers*, 120 F.3d at 455–57 (examining each statement in turn to determine whether they amounted to mere "rumors" or instead were "clear" and "unambiguous[]" enough that the officer's reliance on them was objectively reasonable); *United States v. Vasquez-Algarin*, 821 F.3d 467, 480–81 (3d Cir. 2016) (holding that the government had not proven there was probable cause for an arrest where the arresting officer "relied entirely on informant tips and the word of another detective" but failed to "describe with any specificity the information provided by that other officer or the basis for that officer's statement"); *Ciardiello v. Sexton*, 390 F. App'x 193, 199–200 (3d Cir. 2010) ("[W]here the arresting officer 'never received a clear statement from a fellow law enforcement officer confirming the existence of probable cause for the suspect's arrest,' and instead relied on vague or irrelevant statements by other officers, the arresting officer is not entitled to qualified immunity.") (citing *Rogers*, 120 F.3d at 455–56)).

[71] Alternatively, if the question were whether it was clearly established that the statements on which Defendant Boresky relied were not adequate to support probable cause, that too would require examining the content of the statements.

[72] *George*, 738 F.3d at 571 ("Qualified immunity is not merely a defense, but also 'an entitlement not to stand trial or face the other burdens of litigation.'" (citing *Saucier v. Katz*, 533 U.S. 194, 200 (2001))).

[73] Amend. Compl. at ¶ 41–46.

[74] Amend. Compl. ¶¶ 44–45.

13

for the content of his speech. In other words, because Defendant Boresky allegedly effected Plaintiff's arrest without probable cause, and the arrest interrupted the exercise of his First Amendment right to gather in protest, the illegality of the arrest is claimed to constitute not only a Fourth Amendment violation but a First Amendment violation as well. Defendant Boresky argues that Plaintiff has not stated a claim for a First Amendment violation.

An arrest without probable cause that cuts short an act of speech does have an inherent First Amendment dimension.[75] But the night of Plaintiff's arrest was the last night of the Convention,[76] and by the time Defendant Boresky filed the affidavit, Plaintiff had already been in custody overnight.[77] The Convention had ended, and so, presumably, had the protest. It is therefore unclear what ongoing act of speech Defendant Boresky's actions could have affected. The conspiracy count of the Amended Complaint does allege that "[t]he concerted actions of all the Defendants prevented the Plaintiff [from] exercising his First Amendment right to protest on the night of his arrest *and the two subsequent days the Plaintiff was held in federal custody*."[78] But without any allegation that there was some protest to rejoin, Defendant Boresky's actions are too attenuated from Plaintiff's speech to amount to a First Amendment violation.[79] Accordingly,

---

[75] *See Occupy Columbia v. Haley*, 738 F.3d 107, 120–121 (4th Cir. 2013) (holding that plaintiffs stated a First Amendment claim because arrest prevented them from continuing to protest); *Dellums v. Powell*, 566 F.2d 167, 195 (D.C. Cir. 1977) (explaining that loss of an opportunity to protest due to arrest was a cognizable First Amendment claim); *Haus v. City of New York*, No. 03-4915, 2011 U.S. Dist. LEXIS 155735, at *72 (S.D.N.Y. Aug. 31, 2011) ("[T]he arrest of a person participating in a political protest, in effect entirely[ ]precluding the arrestee's further participation in that First Amendment activity, will trigger a First Amendment violation unless the arrest is supported by probable cause or the police reasonably apprehended that, absent the arrest, the peace or safety of the public would be endangered.").

[76] Amend. Compl. at ¶¶ 8, 29.

[77] *Id.* at ¶¶ 29–30.

[78] *Id.* at ¶ 48 (emphasis added).

[79] If Plaintiff were claiming First Amendment retaliation, merely prolonging his detention might constitute an independent violation. Instead, his claim is that his arrest and detention prevented him from protesting. Thus, he must allege that he could have continued to protest had Defendant Boresky released him from custody instead of filing the affidavit.

14

Plaintiff's First Amendment claim will be dismissed without prejudice. The Court therefore does not reach the *Bivens* analysis on this claim.[80]

### 3. Conspiracy Claim

In addition to the constitutional claims against Defendant Boresky, Plaintiff alleges a conspiracy between Defendant Boresky and the Philadelphia police officers to violate his constitutional rights. "Under Pennsylvania law, a cause of action for civil conspiracy requires 1) a combination of at least two individuals acting with a common purpose of committing a criminal act or intentional tort, 2) an overt act in furtherance of this agreement, and 3) actual legal damage to the plaintiff."[81] Defendant Boresky argues that Plaintiff has not adequately alleged either 1) an underlying common law or constitutional tort to support the conspiracy claim or 2) facts that show a common purpose.

As explained above, Plaintiff has stated a claim against Defendant Boresky for a Fourth Amendment violation, which serves as the underlying constitutional tort. However, the complaint contains no allegation that Defendant Boresky communicated or otherwise acted in concert with the Philadelphia police officers who arrested Plaintiff outside the Convention. Even taking into account the publicly available testimony in the criminal case against the other six arrestees, it appears that Defendant Boresky only communicated with Special Agent McCaa. Accordingly, the conspiracy claim against Defendant Boresky will be dismissed without prejudice, leaving that claim to proceed only against the Philadelphia police officers.

---

[80] While the existence of a *Bivens* cause of action is a "threshold question," a court "can sometimes resolve a case by demonstrating that a plaintiff would lose on the constitutional claim he raises, even if *Bivens* provided a remedy for that type of claim." *Bistrian*, 912 F.3d at 88–89 & n.15. If Plaintiff chooses to amend his Complaint, the *Bivens* question would then have to be resolved.

[81] *Aetna Inc. v. Insys Therapeutics, Inc.*, 324 F. Supp. 3d 541, 553 (E.D. Pa. 2018) (citations omitted).

## IV. CONCLUSION

For the reasons set forth above, Defendant Boresky's motion will be granted as to all claims against him in his official capacity, as well as the First Amendment and civil conspiracy claims against him in his personal capacity. The motion will be denied as to Plaintiff's Fourth Amendment claim against Defendant Boresky in his personal capacity. An appropriate order will be entered.