## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JEREMY GRABER**<br><br>                    **Plaintiff,**<br><br>**v.**<br><br>**SPECIAL AGENT MICHAEL**<br>**BORESKY**<br><br>                    **Defendant.** | **CIVIL ACTION NO. 18-3168** |

### MEMORANDUM OPINION

**Rufe, J.**                                                              **August 22, 2025**

Plaintiff Jeremy Graber brought this lawsuit under 42 U.S.C. § 1983 and pursuant to

*Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*,[1] alleging that his

constitutional rights were violated when he was arrested and then charged with a federal offense

during a protest at the 2016 Democratic National Convention ("DNC"). Defendant Michael

Boresky, a Secret Service agent, has filed a renewed motion for summary judgment of Plaintiff's

remaining claim. Based on the recent decisions of the Supreme Court, including *Egbert v.*

*Boule*,[2] the Court must grant Defendant's motion.

## I.    BACKGROUND

### A.    Factual Background

The facts of this case were discussed in the Court's opinions on Defendant's motion to

dismiss and first motion for summary judgment.[3] The Court assumes familiarity with the

---

[1] 403 U.S. 388 (1971).

[2] 596 U.S. 482 (2022).

[3] Sept. 30, 2019 Mem. Op. [Doc. No. 23]; Jan. 5, 2021 Mem. Op. [Doc. No. 64].

underlying facts but recounts them briefly below. Unless expressly stated, the facts are undisputed.

The Democratic National Convention was held at the Wells Fargo Center in Philadelphia, Pennsylvania from July 25 to July 27, 2016. The Department of Homeland Security designated the Convention as a National Special Security Event ("NSSE"), an event that may be a target for terrorism or other criminal activity. Accordingly, the Secret Service managed security for the Convention, including setting up a security fence around the event.

Throughout the three-day convention, thousands from various groups gathered in protest. Plaintiff joined protests on July 27 as a volunteer medic. That evening, a protester breached the security fence near the corner of Broad Street and Pattison Avenue by cutting the fence with bolt cutters. Several protesters entered the secured zone through the damaged fence and were arrested.

At the time the fence was breached, Plaintiff was standing nearby, but did not assist in breaching the fence or follow other protesters into the secure area. Nevertheless, Philadelphia police officer Joel Dales grabbed Plaintiff, pulled him through the crowd, and began frisking Plaintiff with the assistance of several other Philadelphia police officers. After finding three small knives in Plaintiff's possession, the officers are shown on video pulling Plaintiff past the fence and into the secure area, where they handcuffed him and searched him again. Plaintiff was then transported with six other arrested protesters to the Federal Detention Center, where he was detained overnight.

The following day, Defendant Boresky filed an affidavit with a magistrate judge seeking a federal arrest warrant for Plaintiff and the other protesters and initiated a criminal complaint against them for knowingly entering the restricted grounds of the Convention in violation of 18

U.S.C. § 1752(a)(1). Based on the complaint and affidavit, the magistrate judge ordered Plaintiff detained pending trial. Within days, however, Plaintiff was released after footage of the protest confirmed that Plaintiff never intentionally entered the secure zone, and the government dismissed the charges against him shortly thereafter.

### B.    Procedural Background

Plaintiff filed this lawsuit against Boresky and Philadelphia police officers on July 25, 2018, alleging that he was falsely arrest and detained in violation of the First, Fourth, and Fourteenth Amendments.[4] He brought this action against Philadelphia police officers under 42 U.S.C. § 1983 and against Boresky, a federal employee, pursuant to *Bivens*.[5] Plaintiff later filed an Amended Complaint.[6]

Defendant moved to dismiss the claims against him.[7] In September 2019, the Court granted Defendant's motion as to Plaintiff's First Amendment and conspiracy claims and denied it as to the claim that Defendant violated Plaintiff's Fourth Amendment rights by filing an affidavit in support of an arrest warrant that resulted in his unconstitutional detention.[8]

Defendant then filed his first motion for summary judgment, arguing that Plaintiff lacked a *Bivens* remedy and that qualified immunity barred relief.[9] The Court dismissed that motion without prejudice, giving Plaintiff an opportunity to conduct additional discovery on the qualified immunity question.[10] Defendant filed an interlocutory appeal, on the question of the

---

[4] Compl. [Doc. No. 1].

[5] Plaintiff's case against the Philadelphia police officers settled and they were dismissed from this case in May 2022. *See* Order [Doc. No. 73]; Pl.'s Resp. Renewed Mot. Summ. J. at 1 [Doc. No. 110].

[6] Am. Compl. [Doc. No. 3].

[7] Mot. Dismiss [Doc. No. 8].

[8] Mem. Op. at 16 [Doc. No. 23].

[9] *See* Mot. Summ. J. at 2-6 [Doc. No. 45].

[10] *See* Mem. Op. [Doc. No. 64]; Order [Doc. No. 65].

availability of a *Bivens* remedy. The Third Circuit dismissed the appeal for lack of subject-matter jurisdiction, and Defendant filed a petition for writ of certiorari to the United States Supreme Court.[11]

The United States Supreme Court rejected Defendant's petition on January 16, 2024, and the case proceeded to discovery.[12] Upon completion of discovery, Defendant filed a Renewed Motion for Summary Judgment on March 31, 2025.[13]

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is warranted if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[14] A fact is "material" if resolving the dispute over the fact "might affect the outcome of the suit under the governing [substantive] law."[15] A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[16]

In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor.[17] A court may not weigh the evidence or make credibility determinations.[18] Nevertheless, the party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record.[19] "If the evidence is merely colorable, or is not significantly probative,

---

[11] *Graber v. Doe II*, 59 F.4th 603, 605 (3d Cir. 2023), *cert. denied*, 144 S. Ct. 681 (2024).

[12] Petition for Writ of Certiorari, *Boresky v. Graber*, 144 S. Ct. 681 (No. 23-384).

[13] *See* Renewed Mot. Summ. J. [Doc. No. 104].

[14] Fed. R. Civ. P. 56(a).

[15] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[16] *Id.*

[17] *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

[18] *Boyle v. Cnty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998).

[19] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

summary judgment may be granted."[20] Therefore, if, after drawing all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine dispute as to any material fact, summary judgment is appropriate.[21]

**III.    DISCUSSION**

Defendant moves for summary judgment arguing that, as a matter of law, there is no viable *Bivens* claim. In the alternative, Defendant argues that he is protected by qualified immunity.[22]

**A.    A *Bivens* remedy is unavailable.**

"In certain circumstances, the Constitution affords a cause of action for damages against individual federal officers to redress violations of constitutional rights."[23] The Supreme Court has recognized an implied private action against federal officials in only three cases: (1) *Bivens* itself, which recognized an implied cause of action for violation of the Fourth Amendment's right against unreasonable searches and seizures; (2) *Davis v. Passman*,[24] which recognized a claim for gender discrimination in the employment context under the Fifth Amendment's Due Process Clause; and (3) *Carlson v. Green*,[25] which recognized a claim against prison officials for inadequate medical care in the prison context under the Eighth Amendment. "These three cases . . . represent the only instances in which the [Supreme] Court has approved of an implied damages remedy under the Constitution itself."[26]

---

[20] *Anderson*, 477 U.S. at 249-50 (citations omitted).

[21] *Wisniewski v. Johns–Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987).

[22] As the Court is granting summary judgment because there is no cognizable *Bivens* claim for Plaintiff, the Court need not address whether Defendant is entitled to qualified immunity.

[23] *Kalu v. Spaulding*, 113 F.4th 311, 325 (3d Cir. 2024).

[24] 442 U.S. 228 (1979).

[25] 446 U.S. 14 (1980).

[26] *Ziglar v. Abbasi*, 582 U.S. 120, 131 (2017).

Since then, the Supreme Court has "consistently refused to extend *Bivens* liability to any new context or new category of defendants,"[27] "no matter how desirable that might be as a policy matter, or how compatible with the statute [or constitutional provision]."[28] Rather, the Supreme Court has "made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity."[29]

Accordingly, "the Supreme Court has set forth a two-step inquiry to determine the availability of *Bivens* remedies in a particular case."[30] First, the Court must consider "whether the case presents 'a new *Bivens* context'—*i.e.*, is it 'meaningful[ly]' different from the three cases in which the Court has implied a damages action."[31] "Second, if a claim arises in a new context, a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'"[32]

Between the filing of Plaintiff's case and now, the Supreme Court "has pulled back the reins to what appears to be a full stop and no farther."[33] "[T]he two-step framework established in *Ziglar* largely reduces to just one question: 'whether there is *any* reason to think that Congress *might* be better equipped to create a damages remedy."[34] "By itself, the 'uncertainty' that results from extending *Bivens* to a new context 'forecloses relief.'"[35] At this point in the Supreme

---

[27] *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001).

[28] *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001).

[29] *Ziglar*, 582 U.S. at 135 (citation omitted).

[30] *Kalu*, 113 F.4th at 326.

[31] *Egbert*, 596 U.S. at 492 (quoting *Ziglar*, 582 U.S. at 139-40).

[32] *Id.* (quoting *Ziglar*, 582 U.S. at 136).

[33] *Xi v. Huagen*, 68 F.4th 824, 832 (3d Cir. 2023).

[34] *Fisher v. Hollingsworth*, 115 F.4th 197, 205 (3d Cir. 2024) (quoting *Egbert*, 596 U.S. at 492).

[35] *Id.* at 205 (quoting *Egbert*, 596 U.S. at 493).

Court's *Bivens* jurisprudence, "unless a case is indistinguishable from *Bivens*, *Davis*, or *Carlson*, a damages remedy may be created by Congress, but not by the courts."[36]

        1.    <u>Plaintiff's claim presents a new context.</u>

"Whether a context is new is an 'easily satisfied' test because 'a modest extension of the *Bivens* action is still an extension.'"[37] "[O]ur understanding of a 'new context' is broad."[38] The case presents a new *Bivens* context if "the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court]."[39] While the Supreme Court has never provided an exhaustive list, "[a] case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider."[40] Indeed, "[e]ven 'significant parallels to one of the Supreme Court's previous *Bivens* cases' may not be enough."[41]

Defendant urges that "[u]nder recent Third Circuit and Supreme Court case law, Graber's claim undoubtedly arises in a new context."[42] The Court is obliged to agree. While the Court previously noted that whether Plaintiff's claim presents a new *Bivens* context is "a perplexing

---

[36] *Id.*

[37] *Henry v. Essex Cnty.*, 113 F.4th 355, 361 (3d Cir. 2024) (quoting *Ziglar*, 582 U.S. at 147-49).

[38] *Hernandez v. Mesa*, 589 U.S. 93, 102 (2020).

[39] *Ziglar*, 582 U.S. at 139.

[40] *Id.* at 139-40.

[41] *Henry*, 113 F.4th at 361 (quoting *Ziglar*, 582 U.S. at 147-49).

[42] Mem. Law Supp. Renewed Mot. Summ. J. at 10 [Doc. No. 104].

question" after *Ziglar*, the Supreme Court and Third Circuit have since resolved any ambiguities.[43] As the Court previously held, there are some differences between this case and *Bivens*: "Defendant Boresky was the affiant on the arrest warrant, not the on-scene arresting officer; he is a Secret Service agent, not a federal narcotics agent; and, Defendant Boresky argues, Plaintiff's arrest outside the Convention—an event attended by the President, Vice President, and Democratic presidential nominee—has a national security dimension that the typical Fourth Amendment *Bivens* claim lacks."[44] Where these distinctions may have previously seemed surmountable or irrelevant, recent jurisprudence makes clear that these differences are "meaningful."[45]

First, while Plaintiff—like the plaintiff in *Bivens*—invokes the Fourth Amendment, the Supreme Court has "repeatedly refused to extend *Bivens* actions beyond the specific clauses of the specific amendments for which a cause of action has already been implied."[46] *Bivens* involved the Fourth Amendment's prohibition against "unreasonable searches and seizures."[47] Plaintiff, on the other hand, invokes the Fourth Amendment's prohibition against warrants issued without probable cause.[48]

Second, Plaintiff challenges "a different part of police work than the apprehension, detention, and physical searches at issue in *Bivens*."[49] Plaintiff argues in his response to the renewed motion for summary judgment that his claim is identical to *Bivens*: he too challenges an

---

[43] Mem. Op. at 6 [Doc. No. 23].

[44] *Id.* at 7.

[45] *Ziglar*, 582 U.S. at 139.

[46] *Vanderklok v. United States*, 868 F.3d 189, 200 (3d Cir. 2017).

[47] *Bivens*, 403 U.S. at 389; U.S. Const. amend. IV.

[48] U.S. Const. amend. IV ("[N]o Warrants shall issue, but upon probable cause[.]").

[49] *Xi*, 68 F.4th at 834 (citation omitted).

unreasonable seizure.[50] However, this paints his claim with too broad a brush. Defendant was not the arresting officer, and Plaintiff's remaining claim against him is based on the allegation that Defendant signed an affidavit for a warrant without sufficient investigation into the veracity of the statements of the arresting officers and other on-scene officers forming the basis for the warrant. This is enough to create a new context under the current caselaw.

Courts of Appeals that have had the opportunity—including the Third Circuit—have unanimously declined to extend a *Bivens* remedy to Fourth Amendment claims around case-building and those alleging federal officers made false statements leading to the investigation, arrest, or prosecution of the plaintiff.[51] The consensus of the Courts of Appeals is that Fourth Amendment claims alleging constitutional violations during case-building—affidavits, warrants, gathering of evidence, etc.—present a new context for *Bivens* that is meaningfully different from the claims recognized in *Bivens*. As the Third Circuit explained in *Xi*, "that difference is material because it provides a 'potential' reason to think that judicial intrusion in this context would be harmful or inappropriate."[52]

Plaintiff argues that Defendant here does not belong to a "new category of defendant" because his actions were "no different than any police officer who decided to arrest an individual

---

[50] Pl.'s Resp. Renewed Mot. Summ. J. at 21 [Doc. No. 110].

[51] *See, e.g., Xi*, 68 F.4th at 834 (declining to extend *Bivens* to new context of Fourth Amendment claims that federal agents made false statements and material omissions of exculpatory evidence that led Government to investigate and arrest plaintiff); *Henry*, 113 F.4th at 362 (same where claims challenged officers' post-arrest failure to examine plaintiff's claims of innocence) *Sheikh v. U.S. Dep't Homeland Sec.*, 106 F.4th 918, 925-26 (9th Cir. 2024) (same where claims were based on allegations of fabrication of evidence related to a criminal prosecution); *Quinones-Pimentel v. Cannon*, 85 F.4th 63, 71 (1st Cir. 2023) (same where claims were against federal officers alleged to have fabricated evidence in support search warrants); *Annappareddy v. Pascale*, 996 F.3d 120, 135-37 (4th Cir. 2021) (same where claims alleged falsification of affidavit to obtain search warrant and fabrication of evidence in support of arrest warrant); *Cantú v. Moody*, 933 F.3d 414, 423 (5th Cir. 2019) (same); *Farah v. Weyker*, 926 F.3d 492, 496-98 (8th Cir. 2019) (same, where claims alleged fabrication of evidence, lying, and manipulation of witnesses to a grand jury).

[52] *Xi*, 68 F.4th at 834 (quoting *Egbert*, 596 U.S. at 496).

without conducting any investigation into whether the facts support probable cause for the arrest" and that this case "does not involve 'national security'" in the same way *Xi* did.[53] The Court must reject these attempts to fit his claim into the *Bivens* context. Since *Egbert*, the Third Circuit has held that law enforcement officers from federal agencies outside those enforcing narcotics laws are a "new category" from *Bivens*.[54] Here, Boresky qualifies as a new category of defendant because as a secret service agent at an NSSE, he was charged with protecting the President, Vice President, and presidential nominees present at an NSSE.[55]

Plaintiff argues that bringing his claim under the umbrella of *Bivens* is correct and necessary as a matter of policy.[56] As compelling an argument it is, the Supreme Court has made itself quite clear: "At bottom, creating a cause of action is a legislative endeavor."[57] Because Plaintiff's claim presents a new context, the Court must proceed to the "special factors" analysis.

      2.    <u>"Special factors" counsel hesitation against extending *Bivens*.</u>

Because this case presents a new *Bivens* context, the Court must turn to the second step of the inquiry, which "ask[s] whether there are 'special factors' counselling hesitation in extending *Bivens*."[58] At this second step, "*Egbert* now requires us to ask whether 'the Judiciary *is at least arguably less equipped* than Congress' to weigh the costs and benefits of a damages

---

[53] Pl.'s Resp. Renewed Mot. Summ. J. at 22 [Doc. No. 110].

[54] *See Xi*, 64 F.4th at 834 (FBI counterintelligence agent); *Vanderklok*, 868 F.3d at 199-200, 207 (TSA screeners); *Barry v. Anderson*, No. 22-3098, 2023 WL 8449246, at *3 (3d Cir. Dec. 6, 2023) (ICE agent).

[55] 18 U.S.C. § 3056(e)(1).

[56] *See* Pl.'s Resp. Renewed Mot. Summ. J. at 24-25 [Doc. No. 110] ("This case involves the false arrest of a political protester lawfully exercising his First Amendment rights at the location of a Presidential political convention. The *principles* supporting this cause of action could not be any more compelling. . . . Our Fourth Amendment protections, a tattered flag with more holes than cloth, should not suffer another tear from such a transparent effort to expand executive power.").

[57] *Egbert*, 596 U.S. at 491.

[58] *Kalu*, 113 F.4th at 326 (quoting *Ziglar*, 582 U.S. at 136).

action."[59] Special consideration is given to the existence of an alternative remedial structure and separation-of-powers concerns.[60] If there are special factors counselling hesitation, "a *Bivens* remedy will not be available."[61] Here, under the Supreme Court's recent jurisprudence, special factors counsel hesitation and compel the Court to deny a *Bivens* remedy.

<em>a.</em>  <em>Alternative Remedial Structures Exist</em>

An alternative remedy "is 'reason enough' to 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'"[62] *Egbert* thus constrains the court: "an alternative remedy need not provide 'complete relief' or be as 'effective as an individual damages remedy' to foreclose *Bivens* relief."[63] Rather, the relevant question is "whether an elaborate remedial system . . . should be augmented by the creation of a new judicial remedy."[64]

An alternative remedial process is available to Plaintiff here. As Judge Hardiman explained when Defendant sought to appeal after the first motion for summary judgment:

> The Secret Service is a component of the Department of Homeland Security. Graber can report alleged civil rights abuses by the Secret Service to DHS's Office of the Inspector General. Congress has provided for a senior official within the Office to receive and review complaints about and to investigate alleged civil rights abuses. That procedure need not involve complainant participation or the right to judicial review. What matters is that Congress or the Executive has created a remedial process it deems sufficient to secure deterrence of wrongful conduct. We cannot "second-guess that calibration by superimposing a Bivens remedy." Doing so would raise obvious separation of powers concerns.[65]

---

[59] *Fisher*, 115 F.4th at 205 (quoting *Egbert*, 596 U.S. at 492)).

[60] *Kalu*, 113 F.4th at 328; *Mack v. Yost*, 968 F.3d 311, 320-21 (3d Cir. 2020).

[61] *Ziglar*, 582 U.S. at 136.

[62] *Egbert*, 596 U.S. at 493 (quoting *Ziglar*, 582 U.S. at 137).

[63] *Xi*, 68 F.4th at 837 (quoting *Egbert*, 596 U.S. at 498).

[64] *Bush v. Lucas*, 462 U.S. 367, 388 (1983).

[65] *Graber*, 59 F.4th at 619 (Hardiman, J., dissenting) (citations omitted).

Plaintiff argues that this alternative remedial structure "cannot be considered an 'available' remedy if the general public is unaware of the process."[66] Plaintiff's argument has no basis in law. So long as alternative remedial structures such as an internal "grievance process" are "in place," they "independently foreclose a *Bivens* action."[67] Although the process may not provide equal remedies to a lawsuit, or be equally available, the various complaint forms are available online and easily accessible.[68] "[W]hether a given remedy is adequate is a legislative determination that must be left to Congress, not the federal courts."[69]

### b.    Separations-of-Powers Concerns Exist

"In addition to the availability of an adequate alternative remedial structure, we must also consider whether *Bivens* expansion would improperly encroach upon other branches of government."[70] The Supreme Court has made explicit that certain areas within the executive's domain—including national security—are "particularly sensitive to judicial intrusion."[71] Implying a *Bivens* remedy is "an overstep when it comes to matters intimately related to foreign policy and national security."[72] While there may be instances where a *Bivens* action is recognized in these areas, "courts must be mindful of any unintended consequences that may

---

[66] Pl.'s Resp. Renewed Mot. Summ. J. at 26 [Doc. No. 110].

[67] *Egbert*, 596 U.S. at 497-98.

[68] *See* U.S. Secret Serv., *Report Misconduct*, www.secretservice.gov/reportmisconduct [https://perma.cc/HW8Q-ADGF]; U.S. Dep't of Homeland Sec. (DHS), *Make a Civil Rights Complaint*, www.dhs.gov/file-civil-rights-complaint [https://perma.cc/3STN-8V27]; DHS, Office of Inspector Gen., www.oig.dhs.gov/about/contact [https://perma.cc/E4BY-JYRW].

[69] *Egbert*, 596 U.S. at 497-98.

[70] *Mack*, 968 F.3d at 321.

[71] *Id.*

[72] *Xi*, 68 F.4th at 836 (citation modified).

follow upon creation of a new damages remedy."[73] "[W]e must exercise restraint if judicial intervention would ultimately interfere with executive functions."[74]

Here, the Secret Service's role in coordinating the government's security plan for keeping high-level officers and candidates safe at a NSSE necessarily implicates national security. The Supreme Court has made clear that whether to create "new substantive legal liability" for Secret Service agents engaged in this sort of coordinated response to a security breach is a choice for Congress, not for the Court.[75] Because the Court cannot "predict the 'systemwide' consequences" that would follow if it expanded *Bivens* to allow suits like this one against Secret Service agents, this special factor counsels hesitation in expanding *Bivens*.[76]

## IV.    CONCLUSION

Where there was daylight for Plaintiff's *Bivens* claim when the Court denied Defendant's motion to dismiss in 2019,[77] the Supreme Court made clear in *Egbert* that the sun has set.[78] As a matter of law, Plaintiff has no cognizable *Bivens* claim. "Bound as we are by the Supreme Court's unwillingness to expand *Bivens* to any new context," the Court grants Defendant's renewed motion for summary judgment.[79] An order will be entered.

---

[73] *Mack*, 968 F.3d. at 321-22.

[74] *Id.* at 322.

[75] *Ziglar*, 582 U.S. at 136 (citation modified).

[76] *Egbert*, 596 U.S. at 493.

[77] *See* Mem. Op. [Doc. No. 23].

[78] The law of the case doctrine does not a bar reconsideration of a claim when "supervening new law has been announced." *In re City of Phila. Litig.*, 158 F.3d 711, 718 (3d Cir. 1998).

[79] *Kalu*, 113 F.4th at 350 (Restrepo, J., concurring).